UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CITIZENS FOR FREE SPEECH, LLC; MICHAEL SHAW,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ALAMEDA,<br><br>Defendant. | Case No:  C 19-1026 SBA<br><br>RELATED TO:<br>No. C 18-00834 SBA<br><br>**ORDER PARTIALLY GRANTING DEFENDANT'S MOTION TO DISMISS AND DECLINING TO ASSERT SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS**<br><br>Dkt. 17 |

Plaintiffs Citizens for Free Speech, LLC ("Citizens") and Michael Shaw ("Shaw") bring the instant action to challenge efforts by Defendant County of Alameda ("County") to abate several billboards ("Signs") displayed on Shaw's property in violation of Title 17 of the Alameda County General Ordinance Code ("Zoning Ordinance" or "Ordinance").  The parties are presently before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion as to Plaintiffs' federal claims, which are dismissed without leave to amend.  The Court declines to assert supplemental jurisdiction over the state law claims, which are dismissed without prejudice.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.     BACKGROUND**

   **A.     FACTUAL SUMMARY**

During the relevant time period, Shaw owned a parcel of land located at 8555 Dublin Canyon Road ("Parcel" or "Property") in an unincorporated area of the County. Compl. ¶ 1, Dkt. 1.  Under the County's general land use plan, billboards generally are not permitted "in the unincorporated area of Alameda County."  See Alameda Cty. Gen. Ord.

Code ("Ord.") § 17.52.515.  Nonetheless, the land use plan specific to the Parcel provides an exception by permitting one non-electrical sign with a maximum dimension of two by twenty-four feet.  Dkt. 18-1 at 4 (Ordinance No. O-89-3, adopted Jan. 5, 1989).  Despite these restrictions, in or about 2014, Shaw and Citizens entered into a commercial agreement allowing the latter to construct and display multiple, electrical billboards on the Parcel.  Id. ¶ 8.  Citizens thereafter constructed three billboards (i.e., the Signs) on the Parcel.  Id. ¶ 9.  Prior to the Signs, there was, and presently remains, "another sign on the Parcel displaying onsite commercial speech."  Id. ¶ 11.

### 1. <u>Citizens I</u>

On June 1, 2014, Plaintiffs preemptively filed suit against the County, seeking declaratory and injunctive relief to enjoin it from taking any action under the Zoning Ordinance to abate the Signs.  See <u>Citizens for Free Speech v. County of Alameda</u>, No. C 14-2513 CRB ("<u>Citizens I</u>"), Dkt. 1 at 10 (Compl., Prayer for Relief).  Plaintiffs pursued an as-applied challenge under the First Amendment, facial challenges under the First Amendment to five different sections of the Zoning Ordinance, and equal protection challenges as to two other sections of the Ordinance.  Id., Dkt 130 at 14.  The day after Plaintiffs filed suit, the County sent Shaw a Declaration of Public Nuisance—Notice to Abate.  Id., Dkt. 56 at. 3.  The abatement notice alleged that the Signs violated the Zoning Ordinance and demanded their removal.  Id.[1]

---

[1] Under the Zoning Ordinance, property in violation of the County's regulations may be declared a public nuisance, resulting in the issuance of a notice to abate by the County.  Ord. §§ 17.59.010, 17.59.030.  If the property owner fails, neglects or refuses to comply with notice to abate a nuisance, an administrative hearing shall be conducted before the board of zoning adjustments.  Id. §§ 17.59.040-17.59.060.  "At the time stated in the notice, the [Zoning Board] shall hear and consider all relevant evidence, objections or protests, and shall receive testimony relative to such alleged public nuisance and to proposed rehabilitation, repair, removal or demolition of such property."  Id. § 17.59.060.  A property owner dissatisfied with the board of zoning adjustment Board's decision has ten days to appeal to the County Board of Supervisors.  Id. § 17.59.090.  A ruling by the Board of Supervisors is deemed final, id. § 17.59.100, and may be appealed by way of a judicial action filed within 30 days of the challenged ruling, id. § 17.59.120.  Administrative decisions are subject to judicial review by way of a writ of mandamus.  Cal. Code Civ. Proc. § 1094.5; <u>Mohilef v. Janovici</u>, 51 Cal. App. 4th 267, 282-284 (1996) (reviewing nuisance abatement proceeding through a mandamus proceeding).

1  The action was assigned to the Honorable Charles Breyer.  The extensive
2  proceedings in Citizens I spanned three years and included, inter alia, three summary
3  judgment motions.[2]  Ultimately, Judge Breyer rejected all of Plaintiffs' constitutional
4  challenges to the Zoning Ordinance, except for one aspect of Plaintiffs' equal protection
5  claim.  Id.  Specifically, he found that section 17.52.520(A) of the Ordinance violated the
6  Equal Protection Clause, "as it was content-based and did not withstand strict scrutiny."
7  Id., Dkt. 130 at 2.[3]  Following that order, the County amended section 17.52.520(A) and
8  removed the constitutionally-flawed language to the Court's satisfaction.  Id.  In light of
9  that amendment, the Court rejected Plaintiffs' request for a permanent injunction barring
10 the County from enforcing the Zoning Ordinance as it existed at the time Plaintiffs initiated
11 the action.  Id.

12  In ruling on a subsequent fee motion brought by Plaintiffs, Judge Breyer found that
13 Plaintiffs' victory on their section 17.52.520(A) claim was largely meaningless because it
14 had no bearing on whether the County could seek to abate the Signs.  Id., Dkt. 130 at 15-16.
15 Awarding only a fraction of the requested fees, Judge Breyer explained that, despite three
16 years of litigation, Plaintiffs accomplished "very little" and that they failed to realize "the
17 primary goal of the litigation," i.e., the recovery of actual damages and a permanent
18 injunction allowing them to maintain the Signs without facing abatement proceedings by
19 the County.  Id. at 7-8.  The Court entered judgment on March 8, 2017, from which no
20 appeal was taken.  Id., Dkt. 131.

---

[2] In both their Complaint and opposition to the County's motion to dismiss, Plaintiffs mischaracterize the Court's rulings in Citizens I.  Judge Breyer provided an accurate and comprehensive summary of the proceedings in Citizens I in his order on Plaintiffs' fee motion, which is incorporated by reference herein.  See Citizens I, Dkt. 130.

[3] Section 17.52.520(A) pertained to official public signs or notices or any temporary notice posted by a public officer in the performance of his or her duty.  Citizens I, Dkt. 105 at 5.  Judge Breyer found that this provision favored signs by public officials and therefore was content-based.  Id. at 22-23.

### 1. Citizens II

Upon the conclusion of Citizens I, the County resumed its efforts to abate the Signs by serving Shaw with a new Declaration of Public Nuisance—Notice to Abate ("2017 Notice to Abate") on or about September 28, 2017.  Def.'s RJN Ex. 1, Dkt. 18-1 at 25.  The 2017 Notice to Abate alleged that the Signs violate section 17.18.120 (failure to conform to a development plan) and 17.52.515 (no billboards allowed in unincorporated areas).  See id. Ex. 2.  On or about November 22, 2017, the County sent Shaw notice of an upcoming administrative motion on the abatement notice.  Id. ¶ 23.

On February 2, 2018, Plaintiffs commenced a new lawsuit, Citizens for Free Speech v. County of Alameda, No. C 18-00834 SBA ("Citizens II"), alleging claims for violation of the right to free speech, denial of due process, and denial of equal protection.  Among other things, Plaintiffs predicated these claims on theories that the County was barred from enforcing the Zoning Ordinance against them with respect to the Signs (1) as a result of Judge Breyer's judgment in Citizens I and (2) by virtue of having failed to bring a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) to enforce the Ordinance in Citizens I.

After Plaintiffs filed an amended complaint, the County filed a Rule 12(b)(6) motion to dismiss, which the Court granted.  Id., Dkt. 56.  In its ruling, the Court, consistent with its obligation to sua sponte evaluate its subject matter jurisdiction, found that under the Younger abstention doctrine, it had no power to consider the claims alleged in the pleadings because each sought to enjoin an ongoing state-initiated proceeding.  Id. at 8-10.  Alternatively, the Court ruled that Plaintiffs failed to state any claims upon which relief could be granted.  Id. at 10-18.  Pursuant to Federal Rule of Civil Procedure 58, the Court entered final judgment on September 4, 2018.  Id., Dkt. 57.  Plaintiffs have appealed the Court's ruling.

**B.     THE INSTANT ACTION**

**1.     Administrative Proceedings**

Upon the conclusion of Citizens II, the County again resumed the abatement process by rescheduling the administrative hearing on the 2017 Notice to Abate. Dkt. 18-1 at 3. The East County Board of Zoning Adjustments ("Zoning Board") conducted the administrative hearing on November 8, 2018. Id. "Citizens and Shaw appeared at the hearing and submitted evidence and testimony from Shaw and Jeffrey Herson from Citizens." Compl. ¶ 16; see also Dkt. 18-1 at 2-4. The Zoning Board ultimately ruled against Plaintiffs and issued an abatement order declaring the Property to be in violation of Zoning Ordinance sections 17.18.120 and 17.52.515. The ruling was based on the presence of four unauthorized billboards (including support structures) and one unauthorized digital billboard on the Property, respectively. Dkt. 18-1 at 2, 23.

On November 21, 2018, Plaintiffs, through counsel, appealed the Zoning Board's decision to the County Board of Supervisors. Id. at 17. In their appeal, Plaintiffs did not dispute the Zoning Ordinance violations; rather, they argued (as they did in Citizen II), among other things, that Judge Breyer's ruling in Citizens I forever bars the County from enforcing the Zoning Ordinance and seeking abatement of the Signs; and that the County waived its right to seek abatement under the Zoning Ordinance because the County did not seek affirmative relief in the form of a Rule 13(a) counterclaim in Citizen I. In addition, Plaintiffs alleged that there were procedural flaws in the hearing process. Id. at 17-18.

The appeal hearing before the Board of Supervisors took place on February 5, 2019. Compl. ¶ 20. According to Plaintiffs, they were "afforded no opportunity to present testimony and argument but were only provided with an opportunity to speak during the general public comment session." Id. ¶ 27. Plaintiffs assert that "the County's conduct stated herein was pursuant to, and in conformity with, the County's policies, practices, and customs—including, but not limited to, as codified in the County's Code of Ordinances and Administrative Code—which direct, foster, promote, and condone the conduct stated

herein." Id. ¶ 28.  The Board of Supervisors denied the appeal and upheld the Zoning Board's decision.  Id. ¶ 21.

### 2. New Lawsuit

On February 25, 2019, Plaintiffs commenced the instant action against the County. The first two causes of action are federal claims for violation of free speech under the First Amendment and violation of the right to due process under the Fourteenth Amendment, respectively.  Compl. ¶¶ 38-43.  The remaining claims are for:  violation of free speech under the California Constitution (third cause of action); violation of the right to due process under the California Constitution (fourth cause of action); administrative mandamus under California Civil Code § 1094.5 (fifth cause of action); writ of prohibition under California Civil Code § 1103 (sixth cause of action); declaratory relief (seventh cause of action); and injunctive relief (eighth cause of action).  Id. ¶¶ 44-79.

As relief, Plaintiffs seek: (1) an injunction "barring the County from any and all conduct to directly or indirectly prosecute, penalize, prohibit, injure, encumber, limit, or restrict Plaintiffs' Signs"; (2) a declaration voiding the abatement order; (3) a declaration barring the County from enforcing the abatement order on the ground that the County failed to bring a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) in Citizens I; (4) a declaration that Zoning Ordinance sections 17.59.010-17.59.200 are void under California law; (5) a writ of administrative mandamus under California Code of Civil Procedure section 1094.5 voiding or reversing the abatement order; (6) a writ of prohibition barring the County from "employing its illegal procedure for nuisance abatement in violation of California Government Code section 25845"; and (7) damages, fees and costs. Compl. at 15-16.

The County now moves to dismiss the Complaint under Rule 12(b)(6).  Plaintiffs and the County have filed an opposition and reply, respectively.  The matter is now fully briefed and is ripe for adjudication.

## II. LEGAL STANDARD

Rule 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011).

## III. DISCUSSION

### A. FIRST AMENDMENT CLAIM

The first cause of action alleges that the Zoning Ordinance violates Plaintiffs' First Amendment right to free speech on the grounds that it: (1) contains no "procedural safeguards [that must be followed] before denying the right to speak"; and (2) improperly "vest[s] the County with unfettered discretion to deny the right to speak." See Compl. ¶¶ 39, 60; Pls.' Opp'n at 1, 2-6. In its motion to dismiss, the County contends that this claim is barred by res judicata and otherwise lacks substantive merit. The Court addresses each argument, in turn.

### 1. Res Judicata

Under the doctrine of res judicata, also known as "claim preclusion," a final judgment on the merits forecloses successive litigation of the same claim, regardless of whether the new claim raises the same issues as the earlier suit. Taylor v. Sturgell, 553 U.S. 880, 892 (2008). The doctrine "bars any subsequent suit on claims that were raised or could have been raised in a prior action." Cell Therapeutics, Inc. v. Lash Group, Inc., 586 F. 3d 1204, 1212 (9th Cir. 2009); DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 823 (2015) (noting that res judicata bars repeated claims for the same relief between the same parties). "Res judicata applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1, 824 F.3d 1161, 1164 (9th Cir. 2016) (internal quotations and citation omitted). The party asserting claim preclusion bears the burden of establishing each of these elements. Garity v. APWU Nat'l Labor Org., 828 F.3d 848, 855 (9th Cir. 2016).

Only the first element of the test for res judicata—identity of claims—is in dispute. The Ninth Circuit has identified four factors that are germane to determining whether the identity of claims element has been satisfied: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." Turtle Island Restoration Network v. U.S. Dep't of State, 673 F.3d 914, 920 (9th Cir. 2012). "The last of these criteria is the most important," Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005), and, standing alone, may be sufficient to establish an identity of claims, see Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare and Training Trust Funds v. Karr, 994 F.2d 1426, 1430 (9th Cir. 1993) (citing cases finding that res judicata bars successive claims based only on analysis of the fourth factor).

In the instant case, there can be no legitimate dispute that Plaintiffs' First Amendment claim arises out of the same transactional nucleus of facts and involves the

same rights as Citizens I and Citizens II. Like the prior actions, this case challenges the constitutionality and enforceability of the Zoning Ordinance on the ground that its provisions violate Plaintiffs' right to free speech. Compare Compl. ¶ 28 with Citizens II, Dkt. 42 ¶ 35 and Citizens I, Dkt. 130 at 14.[4] Accordingly, the instant free speech claim necessarily arises out of the same transactional nucleus of facts as the prior actions and is thus barred by res judicata. E.g., Gospel Missions of Am. v. City of Los Angeles, 328 F.3d 548, 557 (9th Cir. 2003) (holding that the same transactional nucleus of facts was involved where the new lawsuit was predicated on the same substantive provisions of the ordinance at issue in the earlier action); Creamer v. City of Tulare, CA. Inc., No. 118CV01535LJOSKO, 2018 WL 5906068, at *2 (E.D. Cal. Nov. 9, 2018) (ruling that res judicata barred second lawsuit which sought "to challenge the same ordinance of the Tulare City Code as in the prior suits").

Plaintiffs argue that this action is distinguishable from Citizens I and Citizens II, asserting that their new free speech claim is premised on the appeal hearing held on February 5, 2019, which upheld the Zoning Board's abatement order. Because the hearing occurred after the conclusion of the prior lawsuits, Plaintiffs contend that their present free speech claim is not barred by res judicata. It is true that "claim preclusion does not apply to claims that accrue after the filing of the operative complaint." Howard v. City of Coos Bay, 871 F.3d 1032, 1040 (9th Cir. 2017)) (emphasis added). However, as will be explained below, Plaintiffs are not alleging a new claim, but rather have merely asserted new facts supporting a previously-alleged claim. See Turtle Island Restoration Network, 673 F.3d at 918 (a new event does not necessarily give rise to a new claim where said claim is directed against a policy or procedure at issue in the prior action); Gospel Missions of Am., 328 F.3d at 558 ("There is no new claim; instead there is a new fact supporting an old

---

[4] The County's abatement action is based on the 2017 Notice to Abate, which was at issue in Citizens II and is the basis of the abatement order challenged in this case. The relevant provisions of the Zoning Ordinance have not changed since Citizens I.

claim. 'An action that merely alleges new facts in support of a claim that has gone to judgment in a previous litigation will be subject to claim preclusion.'") (citation omitted).

The Complaint as well as Plaintiffs' opposition brief demonstrate that their free speech claim is not predicated on any conduct occurring at or the result of the February 5 appeal hearing. Rather, the crux of the claim rests squarely on the theory that the Zoning Ordinance lacks the requisite procedural safeguards to protect speech and vests County officials with unfettered discretion to suppress speech.[5] See Compl. ¶¶ 28, 39 and Pls.' Opp'n at 5-6. The substance of the claim is thus indistinguishable from the free speech claim alleged in Citizens II. Compare id. with Citizens II, Dkt. 42 ¶ 38 and Dkt. 49 at 14. Moreover, the relief sought is the same; namely, to enjoin the County from further pursuing abatement with respect to the Signs. Compare Compl. at 15-16 with Citizens I, Dkt. 1 at 10 and Citizens II, Dkt. 42 at 10-11. The Court therefore finds that Plaintiffs' allegation of new facts—i.e., that the County upheld the abatement order on February 5—does not foreclose application of res judicata. E.g., Yagman v. Garcetti, No. LACV1605944JAKEX, 2017 WL 2115814, at *4 (C.D. Cal. May 2, 2017) (following Turtle Island and ruling that the plaintiff's receipt of a new parking ticket and ensuing, renewed challenge to the defendant's process for reviewing parking tickets was barred by res judicata because the plaintiff was, in effect, challenging the same policy at issue and in effect at the time of the two prior lawsuits), aff'd, 743 F. App'x 837 (9th Cir. 2018).[6]

---

[5] The Complaint does allege flaws in the hearing process but they do not form the basis of Plaintiffs' First Amendment claim. See Compl. ¶ 20. Rather, those allegations challenge the fairness of the hearing and are thus germane to Plaintiffs' claim for mandamus review under California Code of Civil Procedure section 1094.5. See Compl. ¶¶ 51-63. That distinction is made clear in Plaintiffs' opposition brief. See Pls.' Opp'n at 5-6 (explaining basis of the First Amendment claim).

[6] Plaintiffs also argue that their Signs are immune from enforcement because they were erected before the County amended section 17.52.520(A). See Pls.' Opp'n at 3. Plaintiffs made this argument in Citizens I in seeking a permanent injunction to preclude future enforcement against the Signs, see Citizens I, Dkt. 123 at 5-6, which Judge Breyer repeatedly refused to enter, id., Dkt. 130 at 8. In addition, Plaintiffs could have made this argument in Citizens II but did not. As such, Plaintiffs are precluded from raising it now. See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077-78 (9th Cir. 2003).

### 2. Merits

Plaintiffs' section 1983 free speech claim also fails on the merits. The First Amendment's free speech clause provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. amend. I; see 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 489 n.1 (1996). As noted, the gist of the First Amendment claim is that the Zoning Ordinance constitutes an impermissible content-based prior restraint on speech due to (1) the lack of procedural safeguards and (2) the unfettered discretion allegedly afforded to County officials to limit speech. See Compl. ¶¶ 39, 60; Pls.' Opp'n at 1, 2-6.[7]

#### *a)* *Procedural Safeguards*

Prior restraints are not "unconstitutional per se" but are presumed to be constitutionally invalid. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225 (1990). Under Freedman v. Maryland, 380 U.S. 51 (1965), a regulation constituting a prior restraint survives constitutional scrutiny only if it incorporates "procedural safeguards designed to obviate the dangers of a censorship system." Id. at 58. Those safeguards are as follows: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." Thomas v. Chi. Park Dist., 534 U.S. 316, 321 (2002) (citations omitted). It is well settled, however, that Freedman's procedural safeguards only apply to content-based regulations, and not to content-neutral regulations. Epona v. Cty. of Ventura, 876 F.3d 1214, 1225 (9th Cir. 2017) ("the Freedman safeguards are not required for content-neutral time, place, and manner permit schemes") (citing Thomas, 534 U.S. at 322-23).

The parties disagree whether the Zoning Ordinance is content-neutral, and hence, is exempt from the procedural safeguard requirements articulated in Freedman. Whether a

---

[7] A ban on expression "before it happens" constitutes a "prior restraint." United States v. Nat'l Treasury Employees Union, 513 U.S. 454, 468 (1995).

statute is content-neutral or content-based "is something that can be determined on the face of it; if the statute describes speech by content then it is content based." G.K. Ltd. Travel v. City of Lake Oswego, 436 F.3d 1064, 1071 (9th Cir. 2006) (internal quotations and citation omitted). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

Here, the Zoning Ordinance recites that its purpose is "to promote and protect the public health, safety, peace, comfort, convenience and general welfare," including the ability to "implement the general plan of the county by guiding and regulating development…." Ord. § 17.02.020. The content-neutral purpose of the Zoning Ordinance is likewise reflected in its content-neutral provisions. With regard to sections 17.18.120 and 17.52.515, the sections that form the basis of the 2017 Notice to Abate and the abatement order, none of their respective provisions, on their face, is predicated on the content of any speech or expression. While these sections impose restrictions pertaining to the logistics of displaying billboards (e.g., number and size) and require compliance with the applicable development plan, they do not implicate "speech by content." G.K. Ltd. Travel, 436 F.3d at 1071. In addition, these provisions do not apply to particular speech because of the message expressed, nor do they require enforcement authorities to examine content of any speech displayed on a billboard to determine whether the Zoning Ordinance has been violated. See Reed v. Town of Gilbert, — U.S. —, 135 S. Ct. 2218, 2227 (2015) (defining when a law is content based).

Tellingly, Plaintiffs' opposition fails to address the stated purpose of the Zoning Ordinance. Nor does it identify any particular regulations that allegedly are content-based. Instead, Plaintiffs insist that Judge Breyer conclusively ruled in Citizens I that the Zoning ordinance is a content-based regulatory scheme. Pls.' Opp'n at 2-3. But Judge Breyer did not find the Zoning ordinance to be unconstitutional in its entirety. The only provision of the Zoning Ordinance that he found to be content-based was section 17.52.520. Citizens I, Dkt. 130 at 22-23, 26. In response to that determination, the County voluntarily amended

the section to "correct the unconstitutional language." Id. at 16. Importantly, Judge Breyer emphasized that his decision regarding section 17.52.520 ultimately had no bearing on whether the County could pursue its effort to abate the Signs. Id. at 16. Indeed, he rejected Plaintiffs' contention that his ruling that the pre-amendment version of section 17.52.520 was impermissibly content-based entitled them to a permanent injunction barring the County from taking further abatement actions under the Zoning Ordinance. Id. at 15 ("Citizens did not receive a permanent injunction allowing it to maintain its signs").

The Court concludes that the Zoning Ordinance is content-neutral, and therefore, the Freedman procedural requirements relied upon by Plaintiffs to sustain their First Amendment claim are inapt. E.g., G.K. Ltd. Travel, 436 F.3d at 1082 ("because we have held that the Sign Code is content neutral, the procedural requirements of the prior restraint doctrine need not be satisfied"); Granite State Outdoor Advert., Inc. v. City of St. Petersburg, Fla., 348 F.3d 1278, 1282 (11th Cir. 2003) (holding that the city's sign ordinance, the purpose of which was to promote uniformity, preserve aesthetics and foster safety was content-neutral and therefore was not subject to the Freedman procedural requirements); see also H.D.V.-Greektown, LLC v. City of Detroit, 568 F.3d 609, 622 (6th Cir. 2009) (holding that the city's sign ordinance was content-neutral where there was nothing in the record to show that "the distinctions between the various types of signs reflect a meaningful preference for one type of speech over another").

      *b)*  *Unfettered Discretion*

The second aspect of Plaintiffs' free speech claim is that the Zoning Ordinance vests County officials with unfettered discretion to restrict speech. A regulation amounts to an unconstitutional prior restraint if it "vests unbridled discretion in a government official over whether to permit or deny expressive activity." Kreisner v. City of San Diego, 1 F.3d 775, 805 (9th Cir. 1993) (quotation marks and citation omitted). "To avoid impermissible discretion, the challenged ordinance should 'contain adequate standards to guide the

official's decision and render it subject to effective judicial review.'" G.K. Ltd. Travel, 436 F.3d at 1082 (quoting in part Thomas 534 U.S. at 323).[8]

Plaintiffs contend that the Zoning Ordinance lacks "any specification of the factors to be considered by the board of zoning adjustments, the standard of review for any appeal to the board of supervisors, or any restrictions on the authority of the County or any of its agents to declare what is or is not a nuisance." Pls.' Opp'n at 5.  They contend that, without such guidance, the County is free to declare any expression, and the Signs in particular, to be a nuisance and suppress speech "in the first instance without resort to judicial determination." Id.  As will be discussed below, however, the relevant provisions of the Zoning Ordinance—which are neither cited nor discussed by Plaintiffs—demonstrate that they do not afford the County unbridled discretion to declare a nuisance.

The "Abatement Procedures" section of the Zoning Ordinance states that "[a]ny property found by the enforcement officer to be maintained in violation of Title 17 is declared to be a public nuisance." Ord. § 17.59.010 (emphasis added).  Sections 17.18.120 and 17.52.515, which are part of Title 17 and form the basis of the 2017 Notice to Abate, specify, respectively, land in a planned development district must be used in conformance with the applicable development plan and that billboards are not permitted in unincorporated areas.  The applicable plan limits the Parcel to one non-electrical sign of specific dimensions.  See Ordinance No. O-89-3 (adopted January 5, 1989), Dkt. 18-1 at 4. These provisions—which Plaintiffs do not dispute they have violated—are "reasonably specific and objective, and do not leave the decision to 'the whim of the administrator.'" Thomas, 534 U.S. at 324.  The Court therefore finds no merit to Plaintiffs' claim that the Zoning Ordinance vests County officials with unbridled discretion to allow or deny expressive activity.  E.g., Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 904-05 (9th Cir. 2007) (upholding a billboard ordinance against a First Amendment

---

[8] The "unfettered discretion" limitation applies, even if the procedural safeguards articulated in Freedman are inapplicable.  G.K. Ltd. Travel, 436 F.3d at 1082 (noting that even if Freedman is inapt, the regulations at issue "must avoid placing unbridled discretion in the hands of government officials.") (citing FW/PBS, 493 U.S. at 225-26).

challenge where the public official's discretion was "cabined by specific findings regarding the relationship of the sign to the site, the freeway, and other signs in the area," and that the "compatibility requirement delineate[d] fairly specific criteria regarding the relationship between the sign and the site"); G.K. Ltd. Travel, 436 F.3d at 1083 (holding that a local sign ordinance did not vest unbridled discretion where it only permitted "officials to consider a limited and objective set of criteria, namely 'form, proportion, scale, color, materials, surface treatment, overall sign size and the size and style of lettering'").

### B. DUE PROCESS CLAIM

"The Fourteenth Amendment prohibits states from 'depriv[ing] any person of life, liberty, or property, without due process of law.'" Newman v. Sathyavaglswaran, 287 F.3d 786, 789 (9th Cir. 2002) (quoting U.S. Const. amend. XIV, § 1).  To prevail on a procedural due process claim, Plaintiffs must allege and prove "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998); see Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976) (reciting balancing test to evaluate due process claims).

In their second cause of action for violation of due process under section 1983, Plaintiffs allege, in an entirely conclusory manner, that "the conduct of the County … subjects the Plaintiffs to the deprivation of due process rights secured by the Fourteenth Amendment to the United State Constitution."  Compl. ¶ 42.  Plaintiffs acknowledge that they received notice from the County of the proposed abatement and had the opportunity to present evidence and testimony in response thereto at an administrative hearing conducted by the Zoning Board on November 8, 2018.  Id. ¶ 16.  Nevertheless, Plaintiffs aver that they were entitled to additional process:  i.e., the opportunity to cross-examine the author of the staff report at the Zoning Board hearing and the opportunity to present argument, evidence and testimony at the subsequent appeal hearing before the Board of Supervisors held on February 5, 2019.  Compl. ¶¶ 20, 27.  In addition, the Board of Supervisors is alleged to have been "biased" against Citizens.  Id. ¶ 27.

The County moves for dismissal of Plaintiffs' due process claim on the grounds that (1) Plaintiffs received all the process they were due, (2) the additional process sought by Plaintiff would not have altered the outcome of the proceeding because Plaintiffs admit the Signs violate the Zoning Ordinance, and (3) no facts are alleged to support Plaintiffs' claim of bias.  Def.'s Mot. at 5-10.  Plaintiffs' brief does not respond to any the County's contentions nor oppose dismissal of their due process claim.  By failing to respond, Plaintiffs have abandoned said claim and consented to its dismissal.  See Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 888 (9th Cir. 2010) ("A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . , has effectively abandoned his claim, and cannot raise it on appeal."); see also Gwaduri v. I.N.S., 362 F.3d 1144, 1147 n.3 (9th Cir. 2004) ("Courts have consistently exercised their discretion to grant motions on collateral issues, on the basis that, in failing to respond, the opposing party has consented to such action by the court.").

Plaintiffs' lack of response notwithstanding, the Court finds that the County's arguments for dismissal are compelling.  First, Plaintiffs acknowledge that they received notice of the Zoning Ordinance violations and had the opportunity to present evidence and argument before the Zoning Board to challenge the proposed violations.  Compl. ¶ 16.  Due process was thus provided.  See Ludwig v. Astrue, 681 F.3d 1047, 1053 (9th Cir. 2012) (citing Guenther v. C.I.R., 889 F.2d 882, 884 (9th Cir. 1989)); Mohilef v. Janovici, 51 Cal. App. 4th 267, 276 (1996) ("We hold that due process is satisfied as long as the property owner receives adequate notice of the nature of the alleged nuisance and a meaningful opportunity to respond to the charges against him.").  Plaintiffs' purported inability to cross-examine the author of the staff report regarding the Signs at the abatement hearing does not violate due process.  See Chongris v. Board of Appeals of Town of Andover, 811 F.2d 36, 40-41 (1st Cir. 1987) (holding that the cross-examination of witnesses is not constitutionally required at a land-use hearing); Williams v. District of Columbia, 906 F.2d 994, 996 (4th Cir. 1990) (denial of cross-examination did not violate procedural due

1  process when applicant "was represented by counsel and permitted to present extensive
2  evidence").
3      The Court also finds no merit to Plaintiffs' claim regarding the Board of
4  Supervisors' alleged refusal to allow them to present evidence, witness testimony and
5  substantive argument during the appeal hearing.  Plaintiffs admittedly had the opportunity
6  during the abatement hearing to present evidence, witness testimony and substantive oral
7  argument at the abatement hearing before the Zoning Board.  See Compl. ¶ 16.  Plaintiffs
8  cite no provision of the Zoning Code nor any decisional authority holding that the Board of
9  Supervisors must, in connection with an appeal from an abatement hearing, allow the
10 presentation of evidence, testimony and oral argument.  Indeed, such a requirement would
11 be redundant and wasteful.  It is axiomatic that the purpose of an appeal is to review the
12 record created by another decision-maker—as opposed to conducting what would be
13 tantamount to another evidentiary hearing.  Moreover, since Plaintiffs do not dispute that
14 the Signs violate the Zoning Ordinance, it is unclear how the additional process that
15 Plaintiffs contend they should have been afforded at the appeal hearing would have made
16 any difference in the County's determination that the Signs constituted a nuisance subject
17 to abatement.
18     Finally, Plaintiffs allege no facts in the pleadings or their opposition to support their
19 allegation of bias.  Plaintiffs aver only that unspecified Supervisors "cut off" Shaw during
20 his presentation and told him to "be quiet and sit down after approximately three minutes."
21 See Compl. ¶ 27.  The mere fact that the Board of Supervisors may have limited Shaw's
22 presentation does not ipso facto plausibly suggest that they were biased against him.  See
23 Larson v. Palmateer, 515 F.3d 1057, 1067 (9th Cir. 2008) ("impatient remarks are [not]
24 generally sufficient to overcome the presumption of [adjudicatory] integrity, even if those
25 remarks are critical or disapproving of, or even hostile to ... the parties[ ] or their cases")
26 (internal quotation marks and citation omitted).
27     Alternatively, Plaintiffs' due process claim fails because they have other means of
28 post-deprivation review available to them, including a writ of mandate under California

Code of Civil Procedure section 1094.5.  See Saad v. City of Berkeley, 24 Cal. App. 4th 1206, 1211 (1994) (land use decisions subject to judicial review under California Code of Civil Procedure section 1094.5); e.g., See Lake Nacimiento Ranch Co. v. County of San Luis Obispo, 841 F.2d 872, 878 (9th Cir. 1987) (holding that procedural due process claim was barred because there was a California statutory remedy to challenge the results of the County Board of Supervisors' vote on a proposed zoning amendment) (citing Parratt v. Taylor, 451 U.S. 527, 543-44 (1981)); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that a deprivation of property does not violate due process if "adequate state post-deprivation remedies are available"); Arroyo Vista Partners v. Cty. of Santa Barbara, 732 F. Supp. 1046, 1053 (C.D. Cal. 1990) ("[R]elief pursuant to a Writ of Mandate under § 1094.5 of the California Code of Civil Procedure is available to challenge the substance and evidentiary basis for a decision [denying land use permits], and also extends to whether the Board [of Supervisors] proceeded in a manner that denied the plaintiff a fair hearing or otherwise suffered from procedural deficiencies in rendering its administrative decisions.").

### C. SUPPLEMENTAL STATE LAW CLAIMS

All of Plaintiffs' federal claims are subject to dismissal.  Thus, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to assert supplemental jurisdiction over the remaining state law claims (third through sixth causes of action) and dismisses said claims without prejudice.[9]  28 U.S.C. § 1367(c)(3); City of Colton v. Am. Promotional Events, Inc.-West, 614 F.3d 998, 1008 (9th Cir. 2010) (holding that district court acted within its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims after granting summary judgment on all federal claims); Mory v. City of Chula Vista, No. 10-CV-252 JLS (WVG), 2011 WL 777914, *2 & n.1 (S.D. Cal. Mar. 1, 2011) ("Because writs of mandate are exclusively state procedural remedies, they involve complex issues of state

---

[9] Though styled as claims for relief, the seventh claim for declaratory relief and eighth claim for injunctive relief are not substantive claims but simply identify the relief sought.

law. Thus, district courts routinely deny supplemental jurisdiction over California writ of mandate claims[.]") (citing cases).

## IV. CONCLUSION

The Court finds that Plaintiffs' first cause of action for violation of the First Amendment is barred by res judicata, and alternatively, fails to state a claim.  Plaintiffs' failure to respond to the County's argument for dismissal of Plaintiffs' second cause of action for violation of due process constitutes an abandonment of said claim and consent to its dismissal.  Even if not waived, Plaintiffs have failed to state a claim for violation of their right to due process.  No amendment to the pleadings would cure these deficiencies.  As for the remaining state law claims, the Court declines to assert supplemental jurisdiction over them.  Accordingly,

IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Dismiss is GRANTED as to Plaintiffs' first and second causes of action, which are DISMISSED without leave to amend.

2. The Court declines to assert supplemental jurisdiction over Plaintiffs' remaining causes of action which are DISMISSED without prejudice to presentation to a court of competent jurisdiction.

IT IS SO ORDERED.

Dated:  11/06/19

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge