UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CITIZENS FOR FREE SPEECH, LLC; MICHAEL SHAW,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ALAMEDA,<br><br>Defendant. | Case No: C 19-1026 SBA<br><br>RELATED TO:<br>No. C 18-00834 SBA<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES**<br><br>Dkt. 33 |

The instant lawsuit is the third in a series of lawsuits brought by Plaintiffs Citizens for Free Speech, LLC ("Citizens") and Michael Shaw ("Shaw") to challenge efforts by the County of Alameda ("the County") to abate several billboards ("Signs") displayed on Shaw's property. The Court previously granted the County's motion to dismiss as to Plaintiff's federal claims without leave to amend. Dkt. 31. The Court declined to assert supplemental jurisdiction over the remaining state law claims, which were dismissed without prejudice to refiling in state court. Id.

This matter is now before the Court on the County's Motion for Attorney's Fees pursuant to 42 U.S.C. § 1988. Having read and considered the papers submitted in connection with the motion, the Court DENIES the County's motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I. BACKGROUND

## A. FACTUAL SUMMARY[1]

In or about 2014, Citizens and Shaw entered into an agreement allowing Citizens to construct the Signs on Shaw's property, which is located in an unincorporated area of the County. The Signs violate various provisions of Title 17 of the Alameda County General Ordinance Code ("Zoning Ordinance" or "Ordinance"). As a result, the County declared the Signs to be a public nuisance and began efforts to compel Plaintiffs to remove the Signs.

On June 1, 2014, Plaintiffs filed the first of four repetitive lawsuits against the County regarding the Signs and the County's efforts to abate them. In <u>Citizens for Free Speech v. County of Alameda</u>, No. C 14-2513 CRB ("<u>Citizens I</u>"), Plaintiffs pursued an as-applied challenge under the First Amendment, facial challenges under the First Amendment to five different sections of the Zoning Ordinance, and equal protection challenges to two other sections of the Ordinance. After extensive court proceedings lasting over three years, Judge Charles Breyer, the assigned judge, rejected essentially all of Plaintiffs' constitutional challenges to the Zoning Ordinance.[2] Ultimately, Judge Breyer concluded that Plaintiffs accomplished "very little" and that they failed to realize "the primary goal of the litigation," i.e., the recovery of actual damages and a permanent injunction allowing them to maintain the Signs without facing abatement proceedings by the County. Judge Breyer entered judgment on March 8, 2017, from which no appeal was taken.

Upon the conclusion of <u>Citizens I</u>, the County resumed the abatement process by serving Shaw with a new Notice to Abate on September 28, 2017 ("2017 Abatement

---

[1] Unless otherwise indicated, the following factual summary is take from the Court's Order Partially Granting Defendant's Motion to Dismiss ("11/06/19 Order"), Dkt. 31.

[2] Judge Breyer found merit to one aspect of Plaintiffs' equal protection claim. Following that order, the County amended the section of the Zoning Ordinance and removed the flawed language. Satisfied with the amendment, the Court rejected Plaintiffs' request for a permanent injunction barring the County from enforcing the Zoning Ordinance as it existed at the time Plaintiffs initiated the action. 11/06/19 Order at 3.

Notice"). Id. at 4. Plaintiffs responded to the notice by filing Citizens for Free Speech v. County of Alameda, No. C 18-00834 SBA ("Citizens II") on February 2, 2018, again challenging the constitutionality of the Zoning Ordinance. On motion of the County, the Court dismissed Plaintiffs' claims for lack of subject matter jurisdiction and alternatively for failure to state a claim. On September 4, 2018, the Court entered final judgment, which Plaintiffs have appealed to the Ninth Circuit.

Upon the conclusion of Citizens II, the County again resumed the abatement process by rescheduling the administrative hearing on the 2017 Abatement Notice. On November 8, 2018, the East County Board of Zoning Adjustments ("Zoning Board") conducted the hearing, during which Plaintiffs presented evidence and testimony to challenge the abatement notice. The Zoning Board ruled against Plaintiffs and issued an abatement order declaring the Property to be in violation of the Zoning Ordinance. Pursuant to the Zoning Ordinance, Plaintiffs appealed the Zoning Board's decision to the County Board of Supervisors. The Board of Supervisors conducted a hearing on the appeal on February 5, 2019, and thereafter upheld the Zoning Board's decision.

On February 25, 2019, Plaintiffs commenced the instant, third action against the County. The pleadings alleged eight claims for relief, the first two of which were federal claims for violation of free speech under the First Amendment and violation of the right to due process under the Fourteenth Amendment, respectively. Id. The remaining state law causes of action included claims for a writ of administrative mandamus and a writ of prohibition pursuant to California Code of Civil Procedure sections 1094.5 and 1103, respectively. Id. As relief, Plaintiffs sought, inter alia, an injunction barring the County from taking any action against Plaintiffs with respect to the Signs, a declaration that the abatement order is void, and a declaration that the Zoning Ordinance is unenforceable.

On November 6, 2019, the Court issued its order granting the County's motion to dismiss as to Plaintiffs' federal claims and declining to assert supplemental jurisdiction over their remaining state law causes of action. With regard to the First Amendment claim, the Court found that it was barred by res judicata as a result of Citizens I and Citizens II.

In the alternative, the Court ruled that the First Amendment claim failed on the merits. With regard to the due process claim, the Court found that Plaintiffs abandoned the claim by failing to respond to the County's arguments for dismissal. Plaintiffs' failure to respond notwithstanding, the Court independently analyzed each of the County's substantive contentions and found them to be meritorious. Plaintiffs have appealed the Court's ruling to the Ninth Circuit. Dkt. 36.[3]

Pursuant to 42 U.S.C. § 1988, the County now moves for a fee award in the amount of $45,393.93 to recover the cost of defending against the federal claims and bringing the instant fee motion. Plaintiffs have filed an opposition to the motion in response to which the County has filed a reply. The matter is now fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Under 42 U.S.C. § 1988(b), a district court has the discretion to award reasonable attorney's fees and costs to the prevailing party in an action brought under 42 U.S.C. § 1983. Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994). While successful plaintiffs in civil rights actions are awarded attorney's fees "as a matter of course," prevailing defendants are awarded fees only in "exceptional cases." Harris v. Maricopa Cnty. Superior Court, 631 F.3d 963, 968 (9th Cir. 2011). More specifically, a prevailing defendant in a civil rights case is awarded fees only if the court finds that the plaintiff's action was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978); Tutor-Saliba Corp. v. City of Hailey, 452 F.3d 1055, 1061 (9th Cir. 2006). "A case may be deemed frivolous only when the 'result is obvious or the ... arguments of error are

---

[3] After the Court dismissed the instant action, Plaintiffs filed a *fourth* lawsuit against the County, see Citizens for Free Speech v. County of Alameda, No. 19-5269 SI, again challenging the constitutionality and legality of the Zoning Ordinance and the County's efforts to abate the Signs. Plaintiffs dismissed the action on December 5, 2019, after Judge Illston referred the matter to this Court to determine whether the new action was related to the instant action.

- 4 -

wholly without merit.'" Karam v. City of Burbank, 352 F.3d 1188, 1195 (9th Cir. 2003) (citation omitted).

## III. DISCUSSION

### A. EXCEPTIONAL CASE

The County contends that this is an exceptional case on the ground that Plaintiffs' federal claims were frivolous from their inception. Plaintiffs argue the contrary; i.e., that they had a good faith basis for both their First Amendment and due process claims. The Court addresses each claim below.

#### 1. First Amendment Claim

The crux of Plaintiffs' First Amendment claim is that the Zoning Ordinance constitutes an impermissible prior restraint on speech. Prior restraints are not "unconstitutional per se" but are presumed to be constitutionally invalid. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225 (1990). Under Freedman v. Maryland, 380 U.S. 51 (1965), a regulation constituting a prior restraint survives constitutional scrutiny only if it incorporates "procedural safeguards designed to obviate the dangers of a censorship system." Id. at 58.[4] The Supreme Court has held, however, that content-neutral permitting schemes need not contain the procedural safeguards described in Freedman. Thomas, 534 U.S. at 322; accord Epona v. Cty. of Ventura, 876 F.3d 1214, 1225 (9th Cir. 2017) ("the Freedman safeguards are not required for content-neutral time, place, and manner permit schemes") (citing Thomas, 534 U.S. at 322-23).

##### *a) Res Judicata*

The gist of Plaintiffs' First Amendment claim is that the Zoning Ordinance constitutes an impermissible, content-based prior restraint on speech due to (1) the lack of

---

[4] Those safeguards are as follows: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." Thomas v. Chi. Park Dist., 534 U.S. 316, 321 (2002) (citing FW/PBS, 493 U.S. at 227 & Freedman, 380 U.S. at 58-60).

procedural safeguards and (2) the unfettered discretion allegedly afforded to County officials to limit speech. See Compl. ¶¶ 39, 60; see also Pls.' Opp'n to Def.'s Mot. to Dismiss at 1, 2-6, Dkt. 19. In its 11/06/19 Order, the Court ruled that this claim is precluded by the doctrine of res judicata, which "bars any subsequent suit on claims that were raised or could have been raised in a prior action." Cell Therapeutics, Inc. v. Lash Group, Inc., 586 F. 3d 1204, 1212 (9th Cir. 2009).

For res judicata to apply, there must be, inter alia, an identity of claims between the present and former action. See Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1, 824 F.3d 1161, 1164 (9th Cir. 2016). An identity of claims exists when the "two suits arise out of the same transactional nucleus of facts." Frank v. United Airlines, 216 F.3d 845, 851 (9th Cir. 2000). Here, Plaintiffs brought facial and as applied claims in the prior actions challenging the constitutionality and enforceability of the Zoning Ordinance, including claim predicated on the right to free speech. As such, Plaintiffs easily could have raised their "new" free speech claim in those actions and, in fact, did so in Citizens II. See 11/06/19 Order at 10.

In response to the County's motion to dismiss, Plaintiffs argued that they could not have brought their new First Amendment claim earlier because it is predicated on post-Citizens II events; to wit, the County's administrative hearing on the 2017 Abatement Notice held on February 5, 2019. See id. at 9-10. However, that contention was belied by the pleadings as well as Plaintiffs' opposition brief, which confirmed that the free speech claim was based on the claim that the Zoning Ordinance lacks the requisite procedural safeguards to protect speech and vests County officials with unfettered discretion to suppress speech—a claim indistinguishable from the free speech claim alleged in Citizens II. Consequently, the facts alleged regarding the 2019 hearing had no material impact on

the substance of the free speech claim, which could have been (and was) presented in the prior actions.[5]

Tellingly, Plaintiffs' opposition to the instant fee motion completely fails to address the Court's res judicata ruling, thereby conceding the correctness of the Court's ruling. See City of Arcadia v. U.S. Envtl. Protection Agency, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003) ("Plaintiffs do not respond to Defendants' argument .... The Court agrees with Defendants that the implication of this lack of response is that any opposition to this argument is waived.") (Armstrong, J.); see also Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008) (opposing party waives arguments by not raising them in an opposition). Thus, for the foregoing reasons, the Court finds that Plaintiff's free speech claim was frivolous from the outset. Buster v. Greisen, 104 F.3d 1186, 1990 (9th Cir. 1997) (affirming Rule 11 sanctions based on finding that the plaintiff's claims were "frivolous" because they were barred by res judicata).

### 2. Merits

As an alternative matter, the Court finds that Plaintiffs' free speech claim is frivolous on the merits. As noted, the gravamen of the claim is that the disputed provisions of the Zoning Ordinance amount to a prior restraint on speech that cannot survive constitutional scrutiny because they lack procedural safeguards identified by the Supreme Court in Freedman. As noted, however, those safeguards apply only where the regulations are content-based and inapt if the regulation is content-neutral. Thomas, 534 U.S. at 322; Epona, 876 F.3d at 1225.

Here, the Court analyzed the Zoning Ordinance, including the specific sections thereof at issue, and concluded that they are content-neutral; therefore, Freedman's procedural safeguards are not required. 11/06/19 Order at 11. Notably, in opposing the

---

[5] Separate from its First Amendment claim, Plaintiffs alleged that the 2019 hearing was flawed. As the Court explained in its dismissal order, issues specifically related to the manner in which that hearing was conducted is part of Plaintiffs' administrative mandamus claim under California Code of Civil Procedure § 1094.5. The Court, however, declined to assert supplemental jurisdiction over Plaintiffs' state law claims.

County's motion to dismiss, Plaintiffs did not address any provision of the Zoning Ordinance, but instead claimed that Judge Breyer had conclusively ruled in Citizens I that the Zoning Ordinance is a content-based regulatory scheme. The Court rejected that contention, since Judge Breyer made no such finding.[6] See 11/06/19 Order at 12-13.

In the context of the instant motion, Plaintiffs contend that the Court erred in citing Freedman as the source of the procedural safeguards requirement. The import of this argument is unclear, since the only procedural safeguards referenced by Plaintiffs are those articulated in Freedman. For instance, Plaintiffs cited Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 560 (1975) for "the basic requirements for procedural safeguards on speech restrictions…." Pls.' Opp'n to Mot. to Dismiss at 5, Dkt. 19. Yet, the safeguards identified in that case are those articulated in Freedman. See Southeastern Promotions, 420 U.S. at 560 ("We held in Freedman, and we reaffirm here, that a system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards.…") (citing Freedman, 380 U.S. at 58).

Next, Plaintiffs contend that the Court's determination that the Zoning Ordinance provisions at issue are content neutral "is contrary to Ninth Circuit precedent" and that Epona "expressly overruled Judge Breyer's decision in the 2017 Action [i.e., Citizens I]." Pl.'s Opp'n to Mot. to Dismiss at 5 (citing Citizens for Free Speech, LLC v. County of Alameda, 114 F. Supp. 3d 952, 965-66 (N.D. Cal. 2015)). The import of this contention is likewise unclear. To the extent that Plaintiffs are now relying on Epona (which they did not previously cite in opposition to the County's motion to dismiss) to demonstrate that the Zoning Ordinance is content-based, their argument is misplaced. As noted, in finding the Zoning Ordinance provisions to be content neutral, the Court looked to the language of the regulation itself and did not rely on any finding by Judge Breyer. The Court addressed

---

[6] A more extensive discussion of this issue is set forth in the 11/06/19 Order. Dkt. 31 at 12-13.

- 8 -

Judge Breyer's ruling only to address Plaintiffs' erroneous contention that he ruled that the Zoning Ordinance as a whole was content-based.

The above notwithstanding, Plaintiffs' contention that Epona overruled Judge Breyer's decision in Citizens I—or otherwise conclusively establishes that the Zoning Ordinance is content-based—is wholly without merit. In Citizens I, Judge Breyer addressed Plaintiffs' numerous as applied free speech challenges to the Zoning Ordinance, and in doing so, analyzed whether various sections thereof afforded County officials unfettered discretion to make permitting decisions. Citizens I, 114 F. Supp. at 956-957.[7] With regard to section 17.54.130 of the Zoning Ordinance, he ruled that the review procedures applicable to the conditional use permit ("CUP") process appropriately limited the discretion exercised by County officials for three independent reasons. Id. at 965. One of the reasons discussed was that challenged CUP application decisions are reviewed within a reasonable time frame in accordance with California's Permit Streamlining Act, Cal. Gov't Code § 65920, et seq. ("PSA"), which provides the requisite timeline for decisions on "development projects." Id.

In Epona, a property owner seeking to rent out his property for weddings filed suit against the County of Ventura ("Ventura") to challenge its requirement that landowners obtain a CUP to host outdoor weddings on their properties. Among other things, the court considered whether the Freedman safeguards applied to the CUP permitting scheme, which, in turn, raised the question of whether the scheme is content-neutral. Epona, 876 F.3d at 1225. The court noted that "a permitting scheme is not 'content neutral' if it vests unbridled discretion in a permitting official…." Id. In that regard, the court addressed whether the permitting scheme limited Ventura official's discretion with respect to the amount of time within which Ventura is required to render a permitting decision. Id. Ventura citied Citizens I for the proposition that the PSA supplies "a time limit that cabins

---
[7] "[A] permitting scheme is not 'content neutral' if it vests unbridled discretion in a permitting official…." Epona, 876 F.3d at 1225.

official discretion." Epona, 876 F.3d at 1226. The Ninth Circuit rejected Ventura's contention, finding that the PSA only applies to "development projects," and that because a permit to host weddings will not necessarily require construction or reconstruction, the PSA time limits do not apply. Id. Importantly, the Ninth Circuit did not overrule Judge Breyer's published decision in Citizens I; rather, the court merely found that his decision was inapposite because the regulatory scheme at issue—the CUP requirement for outdoor weddings—was outside the scope of the PSA. Thus, Epona has no bearing on the propriety of Judge Breyer's finding in Citizens I regarding section 17.54.130 of the Zoning Ordinance.

### 3. Due Process

Plaintiffs' second federal claim is a section 1983 due process claim. The Due Process Clause of the Fourteenth Amendment "forbids the State to deprive any person of life, liberty or property without due process of law." Goss v. Lopez, 419 U.S. 565, 572 (1975). "A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection." Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., 616 F.3d 963, 970 (9th Cir. 2010). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

In their Complaint, Plaintiffs alleged, in an entirely conclusory manner, that "the conduct of the County … subjects the Plaintiffs to the deprivation of due process rights secured by the Fourteenth Amendment to the United State Constitution." Compl. ¶ 42. While acknowledging that they had received notice of and the opportunity to be heard at the abatement hearing, Plaintiffs contend that they should have been afforded additional process at the abatement hearing and the subsequent appeal hearing. Id. ¶¶ 20, 27. In addition, the Board of Supervisors is alleged to have been "biased" against Citizens. Id. ¶ 27.

### *a) Waiver*

The County moved for dismissal of Plaintiffs' due process claim on the grounds that (1) Plaintiffs received all the process they were due, (2) the additional process sought by Plaintiffs would not have altered the outcome of the proceeding because Plaintiffs admitted that the Signs violate the Zoning Ordinance, and (3) no facts are alleged to support Plaintiffs' claim of bias. Def.'s Mot. at 5-10. In their opposition, Plaintiffs offered no response to the aforementioned arguments. As such, the Court construed Plaintiffs' silence as an abandonment of their federal due process claim. 11/06/19 Order at 16.

Plaintiffs now assert that they did, in fact, respond to the County's argument regarding due process, and point to their argument regarding the County's alleged failure to comply with Government Code section 25845 ("section 25845").[8] See Opp'n to Def.'s Mot. for Attorney's Fees ("Opp'n") at 7, Dkt. 35. Plaintiffs are mixing apples with oranges. In their motion to dismiss, the County made specific and detailed arguments, supported by legal analysis and citations to case law, demonstrating the infirmity of Plaintiffs' federal due process claim. See Def.'s Mot. to Dismiss at 5-10, Dkt. 17. Plaintiffs offered no response to any of those contentions. Plaintiffs' argument pertaining to section 25845 did not address their federal due process claim; rather, it concerned their state law cause of action for administrative mandamus under California Code of Civil Procedure section 1094.5. See Opp'n to Def.'s Mot. for Atty. Fees at 6; Opp'n to Mot. to Dismiss at 6; Compl. ¶ 62. As such, it is clear from the record that Plaintiffs offered no response to the County's arguments for dismissing the federal due process claim, thereby resulting in an abandonment of said claim. See Jenkins v. County of Riverside, 398 F.3d

---

[8] Section 25845 states: "The board of supervisors, by ordinance, may establish a procedure for the abatement of a nuisance. The ordinance shall, at a minimum, provide that the owner of the parcel, and anyone known to the board of supervisors to be in possession of the parcel, be given notice of the abatement proceeding and an opportunity to appear before the board of supervisors and be heard prior to the abatement of the nuisance by the county. However, nothing in this section prohibits the summary abatement of a nuisance upon order of the board of supervisors, or upon order of any other county officer authorized by law to summarily abate nuisances, if the board or officer determines that the nuisance constitutes an immediate threat to public health or safety." Cal. Gov. Code § 25845(a).

1093, 1095 n.4 (9th Cir. 2005) (holding that plaintiff "abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment").

### *b)* *Merits*

Even if the Court were to consider Plaintiffs' arguments regarding section 25845 as support for their federal due process claim, the Court's assessment of the due process claim would not change. Plaintiffs argue that, under section 25845, the Board of Supervisors, as opposed to the Zoning Board, should have conducted the hearing on the abatement notice.[9] As noted, section 25845 provides, inter alia, that the owner of a parcel "be given notice of the abatement proceeding and an opportunity to appear before the board of supervisors and be heard prior to the abatement of the nuisance by the county." Cal. Gov. Code § 25845(a).

For section 25845 to sustain a procedural due process claim, the statute must first create a constitutionally protected property or liberty interest. Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994). Plaintiffs have not identified any such interest. To the extent that they are asserting an interest in having the Board of Supervisors conduct the abatement hearing and issue the abatement order, Plaintiffs' claim fails. A procedural requirement can give rise to a property interest "only if the procedural requirements are intended to be a significant substantive restriction on the [defendant's] decision making." Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir. 1984). This requirement applies equally to a liberty interest predicated on a state statute. See Moor v. Palmer, 603 F.3d 658, 661 (9th Cir. 2010).

---

[9] In fact, that is what transpired. The Zoning Board conducted the initial hearing, at which Plaintiffs presented evidence and argument against the issuance of an abatement order. Compl. ¶ 16. After considering the record presented, the Zoning Board issued the abatement order. Id. ¶ 17. Plaintiffs filed a written appeal to the Board of Supervisors which conducted a further hearing. RJN Ex. 1 at 15-19, Dkt. 18-1. In an order dated February 5, 2019, the Board of Supervisors denied Plaintiffs' appeal, determined that the signs violate the County's ordinances and constitute a public nuisance, and ordered abatement. Id. Ex. 2 at 1-4, Dkt. 18-2. Plaintiffs complain that they were not allowed to present additional evidence at the appeal hearing. However, as will be discussed below, any purported flaws in the manner in which either hearing was conducted can be addressed through state remedies, such as a writ of mandamus.

Here, section 25845 merely specifies that a county board of supervisors may establish an ordinance governing the procedure for the abatement of a nuisance. The ordinance must provide for notice to the owner of the property along with the opportunity to appear before the board of supervisors before the nuisance is abated. Cal. Gov. Code § 25845(a).[10] Nothing in section 25845 addresses, let alone imposes any significant substantive restrictions on the County's ultimate decision on whether a zoning violation constitutes a public nuisance subject to abatement. Consequently, section 25845 does not confer any property or liberty interest upon which to predicate a section 1983 claim for denial of procedural due process. See Goodisman, 724 F.2d at 820 (holding that the defendant university's procedures for determining tenure for professors did not give rise to a property interest because the procedures did not limit the university's discretion in deciding whether to confer tenure).

Separate and apart from the above, Plaintiffs' due process claim fails because Plaintiffs have "an available state remedy"—a writ of mandamus under California Code of Civil Procedure section 1094.5—to address their contention that the abatement hearing process was unfair and procedurally improper. It is well settled that the availability of a state remedy bars a section 1983 due process claim. E.g., Lake Nacimiento Ranch Co. v. San Luis Obispo Cty., 841 F.2d 872, 875, 878-79 (9th Cir. 1987) (rejecting a due process claim predicated upon an allegedly biased vote by the county board of supervisors on a proposed zoning amendment); Arroyo Vista Partners v. County of Santa Barbara, 732 F. Supp. 1046, 1052-53 (C.D. Cal. 1990) (dismissing a procedural due process claim challenging a board of supervisor's zoning decision, finding that a writ under section 1094.5 provided a sufficient remedy to address the plaintiff's claims of procedural deficiencies in the hearing process). Although the Court cited the availability of a state remedy as a bar to their due process claim, Plaintiffs tellingly fail to address the issue in

---

[10] As discussed above, there was no violation of section 25845. See n.9, supra.

their opposition to the County's fee motion, thereby conceding the correctness of the Court's ruling. See 11/06/19 Order at 17-18.

In sum, the Court finds that Plaintiffs' First Amendment and due process claims were frivolous from their inception and this is an exceptional case for purposes of a fee award under section 1988. The Court now turns to whether a fee award in the amount requested by the County is appropriate.

### B. AMOUNT OF FEES TO BE AWARDED

Under 42 U.S.C. § 1988, when a plaintiff in a civil rights action asserts both frivolous and non-frivolous claims, a defendant may only recover fees that were incurred defending against the frivolous claims. See Fox v. Vice, 563 U.S. 826, 829 (2011) ("Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim."). "[W]here a plaintiff in a § 1983 action alleges multiple interrelated claims based on the same underlying facts, and some of those claims are frivolous and some are not, a court may award defendants attorneys fees with respect to the frivolous claims only when those claims are not 'intertwined.'" Harris v. Maricopa Cty. Superior Court, 631 F.3d 963, 973 n.2 (9th Cir. 2011) (citing Tutor-Saliba, 452 F.3d at 1063-64. The burden is on the defendant seeking a fee award to establish which portion of the fees is attributable to the frivolous claims. See id. at 972.

The County seeks a fee award in the amount of $45,393.93. In calculating that sum, the County asserts it removed any fees for work on the case "generally" and exclusive to the state law claims. Zinn Decl. ¶¶ 6, 7, Dkt. 33-1. The flaw in this approach, however, is that it does not properly account for whether any of the federal and state law claims are intertwined. The County's burden is to show that the fees sought pertain *exclusively* to the frivolous (i.e., federal) claims and that such claims are not intertwined with the state law causes of action. See Harris, 631 F.3d at 973 n.2. This is a difficult burden that the County has not met. See id. at 972 ("Where, as here, the plaintiff seeks relief for violation of his civil rights under various legal theories based on essentially the same facts, and a number of his claims are not frivolous, the burden on the defendant to establish that fees are

attributable solely to the frivolous claims is from a practical standpoint extremely difficult to carry.").

From a review of the pleadings, it is readily apparent that there is overlap between the state and federal claims. For example, some of the same conduct underlying Plaintiffs' federal due process claim also is alleged in their state law cause of action for a writ of administrative mandamus. Compare Compl. ¶¶ 16, 20, 42 with id. ¶¶ 51, 52. Likewise, Plaintiffs' federal free speech claim overlaps with their free speech claim under the California Constitution. Compare id. ¶ 39 with id. ¶ 45. Because the County has not—and cannot—demonstrate that the requested fees were incurred exclusively in connection with Plaintiffs' frivolous federal claims, their fee motion must be denied. E.g., Braunstein v. Arizona Dep't of Transp., 683 F.3d 1177, 1189 (9th Cir. 2012) (reversing a section 1988 fee award where frivolous claims were intertwined with non-frivolous claims).

## IV. **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT the County's Motion for Attorneys' Fees is DENIED.

IT IS SO ORDERED.

Dated: March 2, 2020

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge